## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUZANNE BLOCK and CHARLES )
JUSTUS, III, Individually and on Behalf )
of All Others Similarly Situated, )
      )
      Plaintiffs, )
      )
      vs. )
      )
GENERAL MOTORS LLC, ONSTAR )
LLC, and LEXISNEXIS RISK )
SOLUTIONS INC., )
      )
      Defendants. )
_____ )

Civ. No. _____

Hon.

**CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiffs Suzanne Block and Charles Justus, III (collectively, "Plaintiffs"), by and through the undersigned counsel, bring this action against Defendants General Motors LLC ("GM"), OnStar LLC ("OnStar"), and LexisNexis Risk Solutions Inc. ("LexisNexis," and collectively with GM and OnStar, "Defendants"), individually and on behalf of all others similarly situated ("Class Members"), and in support thereof, allege upon personal knowledge as to their own actions, and upon information and belief and their counsels' investigations as to all other matters, as follows:

## INTRODUCTION

1.     This case arises from the clandestine tracking, interception, transmission, and collection of Americans' driving behavior data with secret computer systems automatically installed in their vehicles or on their cellular telephones.

2.     In recent years, vehicles have become more and more sophisticated, integrating electronics into nearly every component. These electronics perform a variety of functions, including running a vehicle's engines, brakes, air conditioning, and entertainment systems.

3.     But as was recently unveiled in a March 11, 2024 New York Times article,[1] these electronics were also carrying out a more nefarious purpose: the secret tracking, interception, transmission, and collection of millions of drivers' personal driving behavior data, which was then sold by GM and OnStar through intermediaries such as LexisNexis Risk Solutions to automobile insurance companies, who in turn used the data to increase drivers' vehicle insurance premiums.

4.     The information collected included what LexisNexis calls "telematics data," which itself includes acceleration events, hard brake events, high speed events, distance traveled, time of day traveled, vehicle information such as VINs, and sometimes location data and GPS data.

5.     Plaintiffs are just two of the millions of drivers of GM-manufactured vehicles who have had their data secretly intercepted and used in this illegal scheme. They bring this action for damages and injunctive relief on behalf of all persons whose driver behavior data was impacted by Defendants' illegal conduct.

---

[1]   Ex. 1, Kashmir Hill, *Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies*, N.Y. TIMES (Mar. 11, 2024), https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html.

## PARTIES

### A.  Plaintiffs

6.     Plaintiff Suzanne Block is a natural person, and a resident and citizen of Florida. Plaintiff Block resides in Vero Beach, Florida.

7.     Plaintiff Charles Justus, III is a natural person, and a resident and citizen of Florida. Plaintiff Justus resides in San Antonio, Florida.

### B.  Defendants

8.     Defendant General Motors LLC is a limited liability company organized under the laws of Delaware, with its headquarters and principal place of business located in Detroit, Michigan. GM manufactures and sells vehicles in the United States and across the world, including Chevrolet, GMC, Cadillac, and Buick branded vehicles.

9.     Defendant OnStar LLC is a limited liability company organized under the laws of Delaware, with its headquarters and principal place of business located in Detroit, Michigan. Defendant OnStar is a subsidiary of Defendant GM and provides communications, security, emergency services, navigation, diagnostics, and information services to GM vehicles in the United States and across the world.

10.    Defendant LexisNexis Risk Solutions Inc. is a corporation organized under the laws of Delaware with its principal place of business in Alpharetta, Georgia. Defendant LexisNexis obtained Plaintiffs' and Class Members' driver

behavior data from GM and OnStar and shared it with third parties, including insurance companies. LexisNexis conducts substantial business in Michigan, and has offices located at 100 West Big Beaver Road, Troy, Michigan 48084.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this action alleges violations of federal law. This Court has supplemental jurisdiction over the state-law claims in this action pursuant to 28 U.S.C. §1367.

12.    This Court has personal jurisdiction over each Defendant. Defendants GM and OnStar are headquartered and have their principal places of business in Detroit, Michigan. Moreover, each Defendant transacts business and is admitted to do business in Michigan; maintains substantial contacts in Michigan; and committed the violations at least in part in Michigan.

13.    Venue is proper in this District under 28 U.S.C. §1391 because Defendants GM and OnStar are headquartered in this District, LexisNexis has offices in Troy, Michigan, substantial parts of the events giving rise to the claims in this action were related to activities that took place in this District, and Defendants conduct substantial business in this District.

## FACTUAL ALLEGATIONS

### A.    The Scheme

14.    Starting in 2015, GM equipped many of its vehicles with OnStar software and related applications.

15.    The OnStar-related applications on GM vehicles, with names such as MyChevrolet, MyBuick, and MyCadillac, allow GM and OnStar to collect, record, store, and transmit data relating to driver behavior, among other things such as the vehicle's condition. Driver behavior includes things such as the driver's average speed; percentage of time the driver exceeds 80 miles per hour; the driver's frequency and intensity of acceleration and braking; and late-night driving. The OnStar software collects, records, and stores this myriad driver behavior data after each drive.

16.    Importantly, while GM claims it does not automatically enroll drivers in OnStar, that OnStar is an "opt-in" application, and that OnStar does not collect driving behavior data without consent, research has shown that this is a lie. Instead, GM and OnStar track, collect, intercept, store, and ultimately transmit and share driver behavior data with third parties, whether or not a driver consents.

17.    What's clear is that neither GM nor OnStar provide consumers with any disclosure that their driver behavior data is being or will be collected, gathered, stored, transmitted, or sold to third parties, much less without compensating the

consumer for their data. More disconcerting still is that GM and OnStar do not disclose their sale of driver behavior data to third parties like LexisNexis who then resell – for profit – the data to automobile insurers resulting in higher insurance quotes or premiums.

18.     Instead, GM and OnStar make false and misleading representations to consumers that OnStar is an "optional" product, that collection of their data is "optional," and that OnStar simply "help[s] [drivers] maximize their vehicle's overall performance, reduce vehicle wear and tear and encourage safe driving."

19.     Defendants claim to have secured drivers' consent for the collection and dissemination of driving data. Yet, this purported 'consent' is obscurely placed in the fine print of lengthy and ambiguous privacy policies, effectively concealing the existence of these partnerships and the full scope of data sharing from the drivers.

20.     Even for drivers who consciously opt into services like OnStar's Smart Driver, the disclosures fall short of transparently acknowledging the extent of data sharing. For instance, there was no clear warning or prominent disclosure indicating that opting into such services would result in third-party access to one's driving data. This practice is misleading and obscures the true risks associated with data sharing.

21.     GM's and OnStar's interception, misrepresentation, and material omission contradicts the very promise these Defendants make to use appropriate safeguards to protect drivers' data from unintended disclosure.

22.    To be sure, GM and OnStar were recently forced to admit that they had, in fact, been sharing drivers' data with third parties such as LexisNexis all along, stating, "As of March 20, 2024, OnStar Smart Driver customer data is ***no longer*** being shared with LexisNexis or Verisk." (emphasis added). By this time, likely tens or hundreds of millions of driver behavior data points had been surreptitiously collected, transmitted, and sold by GM and OnStar to third parties like LexisNexis, which in turn sold those data points to insurance companies, collectively costing consumers millions of dollars in higher insurance premiums.

23.    LexisNexis was not some good-faith, innocent data broker, but an integral player in the scheme.

24.    A self-described "analytics provider for industries around the globe, including financial services, retail/ecommerce, logistics and telecommunications," LexisNexis offers data analytics to thousands of other companies, including the automobile insurance industry, claiming to "help insurers and automakers streamline business processes, control costs and improve customer experiences."

25.    Indeed, LexisNexis purports to "help" automobile insurers by collecting and consolidating third-party data that can be used to set or modify (most often, increase) drivers' automobile insurance quotes or premiums.

26.    Among the data LexisNexis offers to insurers, for a price, is driver behavior data. As LexisNexis itself touts, it combines "[e]verything [insurers] need to assess driving risk, all in one place."

27.    LexisNexis boasts that its data analytics provides "comprehensive insights about household drivers, vehicles, and policy history," and outs its "telematics solutions" as "provid[ing] timely connected car data and mobility risk insights[.]"

28.    More specifically, LexisNexis admits to "receive[ing] and manage[ing] data from connected vehicles, mobile apps and third-party services. The driving behavior data received is normalized and used to generate scores and attributes that are more easily ingested into insurance workflows to help better assess risk." According to LexisNexis, this allows insurers to "predict insurance loss potential," *i.e.*, set quotes or premiums. LexisNexis is unabashed about what it offers to automobile insurers, promising to: "improve your ability to assess risk and capture otherwise missed premium."

29.    In simple terms, LexisNexis obtains driver behavior data, repackages it, and sells its to automobile insurers, which often results in higher insurance premiums for the drivers whose data is being used. This occurs without drivers' full knowledge and consent, including Plaintiffs and Class Members.

30.     On information and belief, LexisNexis has never disclosed that it obtains driver behavior data from GM and OnStar without drivers' knowledge or consent, nor that it sells such data to automobile insurers. Obviously, LexisNexis never compensates any of those drivers even a penny of its profits from those sales.

31.     Rather, LexisNexis knowingly purchases or otherwise obtains the driver behavior data that GM and OnStar surreptitiously intercepts and collects. Then, LexisNexis turns a profit for itself by marketing that driver behavior data to automobile insurers, who in turn often set or increase drivers' quotes or premiums based on the data. Everyone in this series of transactions profits, except drivers themselves – the very people whose data is being collected and brokered without their full knowledge and consent.

32.     Plaintiff and other Class Members suffered actual harm and the risk of future harm as a result of GM and OnStar's illicit activities, including, but not limited to, invasion of their privacy interest in their own data, loss of control over their own data, the sale of their own data without compensation, and adverse credit reporting and impaired credit scores.

**B.     Plaintiffs' Experiences**

33.     Plaintiff Block leases a vehicle manufactured by GM: a 2022 Buick Encore. Plaintiff Block's vehicle is currently leased for a 39-month term, beginning in January 2022.

34.    Plaintiff Block's lease agreement makes no mention of LexisNexis, data sharing, or anything privacy-related.

35.    Plaintiff Block has never knowingly opted into sharing her driving behavior data with anyone, much less agree that his driving behavior data could be shared with or sold to a third party who would thereafter share or sell his information to other companies.

36.    Plaintiff Block is informed and believes that GM and OnStar sold and shared her driving behavior data to LexisNexis without her knowledge and consent.

37.    LexisNexis's consumer-related disclosures and reports regarding driver behavior contain each driving event, including trip details that show the start date, end date, start time, end time, acceleration events, hard brake events, high speed events, distance, and VIN.

38.    Notably absent from these consumer disclosures and reports is any context related to these driving events. The reports do not define what these events mean nor how they are calculated. Furthermore, the reports do not explain how or why someone might have experienced these events. Stating these events, by themselves, says nothing of the other driving conditions and factors one may have experienced.

39.     Upon information and belief, the uncontextualized, misleading, and personal driving information LexisNexis shared with Plaintiff Block's insurance company resulted in increases in her vehicle insurance premiums.

40.     Moreover, Plaintiff Block is informed and believes that GM and OnStar mislead individuals such as her about their data-sharing practices. Plaintiff Block never knowingly consented to these practices.

41.     Plaintiff Block's privacy has been gravely invaded by Defendants' improper actions.

42.     Plaintiff Justus currently owns two vehicles manufactured by GM: a 2022 Cadillac Escalade and a 2020 GMC Sierra 2500 HD. He previously owned a 2021 GMC Sierra 3500 HD.

43.     Plaintiff Justus's purchase agreements make no mention of LexisNexis, data sharing, or anything privacy-related.

44.     Plaintiff Justus has never knowingly opted into sharing his driving behavior data with anyone, much less agree that his driving behavior data could be shared with or sold to a third party who would thereafter share or sell his information to other companies.

45.     Plaintiff Justus is informed and believes that GM and OnStar sold and shared his driving behavior data to LexisNexis without his knowledge and consent.

46.     LexisNexis's consumer disclosures and reports regarding driver behavior contain each driving event, including trip details that show the start date, end date, start time, end time, acceleration events, hard brake events, high speed events, distance, and VIN.

47.     Notably absent from these consumer disclosures is any context related to these driving events. The reports do not define what these events mean nor how they are calculated. Furthermore, the reports do not explain how or why someone might have experienced these events. Stating these events, by themselves, says nothing of the other driving conditions and factors one may have experienced.

48.     Upon information and belief, the uncontextualized, misleading, and personal driving information shared with Plaintiff Justus' insurance company resulted in increases in his vehicle insurance premiums.

49.     Moreover, Plaintiff Justus is informed and believes that GM and OnStar mislead individuals about their data sharing practices. Plaintiff Justus never knowingly consented to these practices.

50.     Plaintiff Justus's privacy has been gravely invaded by Defendants' improper actions.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated ("Class Members") under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

52.    Plaintiffs propose the following Nationwide Class definition, subject to amendment as appropriate:

> All persons residing in the United States who owned or leased a GM manufactured vehicle and who had their vehicle's driving data collected and shared with a third party without their consent.

53.    Plaintiffs proposed the following Florida Class definition, subject to amendment as appropriate:

> All persons residing in Florida who owned or leased a GM manufactured vehicle and who had their vehicle's driving data collected and shared with a third party without their consent.

54.    Excluded from the Classes are Defendants and their affiliates, parents, subsidiaries, officers, agents, and directors, and any entities in which Defendants have a controlling interest; the judges(s) presiding over this matter, and the clerks, judicial staff, and immediate family members of said judges(s); Plaintiffs' counsel; and Defendants' counsel.

55.    Plaintiffs reserve the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

56.     The Classes defined above are readily ascertainable from information in Defendants' possession. Thus, identification of Class Members will be reliable and administratively feasible.

57.     Plaintiffs and Class Members satisfy the numerosity, commonality, typicality, and adequacy requirements under Federal Rule of Civil Procedure 23.

58.     *Numerosity*. The Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Classes each consists of millions individuals who owned or leased GM vehicles.

59.     *Commonality*. There are many questions of law and fact common to the Classes. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, but are not limited to:

(a)     Whether GM and OnStar collected and tracked Plaintiffs' and the Class Members' driving behavior.

(b)     Whether Plaintiffs and the Class Members consented to have their data shared with LexisNexis and third parties.

(c)     Whether LexisNexis obtained Plaintiffs' and Class Members' driver behavior data without consent.

(d)     Whether LexisNexis sold Plaintiffs' and Class Members' driver behavior data to third parties without consent.

(e)     Whether Defendants conduct constitutes violations of the Fair Credit Reporting Act.

(f)     Whether Defendants' conduct constitutes violations of the Federal Wiretap Act.

(g)     Whether Defendants' practices are considered unfair or deceptive.

(h)     Whether Defendants' practices constitute and invasion of privacy.

(i)     Whether Defendants' conduct was knowing and willful.

(j)     Whether Defendants are liable for damages, and the amount of such damages.

(k)     Whether Defendants should be enjoined from such conduct in the future.

60.     *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was improperly collected and shared with third parties without their consent. Moreover, all Plaintiffs and Class Members were subjected to Defendants' uniformly illegal and impermissible conduct.

61.     *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Classes. Plaintiffs' counsel are competent and experienced in litigating complex class actions. Plaintiffs have no interests that conflict with, or are antagonistic to, those of the Classes.

62.     *Predominance*. Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was collected, transmitted, and sold in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

63.     *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action

presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

64.     The claims brought herein are manageable. Defendants' uniform conduct, the consistent provision of the relevant laws, and ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this case as a class action.

65.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

66.     Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

67.     Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

## CAUSES OF ACTION

## COUNT I

### Violation of Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681e(b)
**(On Behalf of Plaintiffs and Class Members Against LexisNexis Only)**

68.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

69.     Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

70.     LexisNexis obtains driver behavior data from GM and OnStar and furnishes it to third parties, including automobile insurers, without Plaintiffs' and other Class Members' full knowledge and consent.

71.     LexisNexis's provision of credit information that includes driver behavior data to third parties, including automobile insurance companies, constitutes the furnishing of consumer reports under the FCRA and an impermissible purpose and use of data under the FCRA.

72.     LexisNexis, acting as a consumer reporting agency, as defined by 15 U.S.C. §1681c(1), has failed to implement procedures to maintain maximum possible accuracy regarding Plaintiffs' and the Class Members' driving data.

73.     LexisNexis has knowingly and willfully engaged in the collection and production of inaccurate data metrics regarding Plaintiffs' and Class Members' driving abilities.

74.     As a result of LexisNexis's conduct, insurance carriers and others who view these consumer reports receive and in turn rely on an inaccurate representation of Plaintiffs' and Class Members' driving abilities.

75.    The foregoing deceptive acts and practices constitute reckless and/or negligent violations of the FCRA, including, but not limited to, 15 U.S.C. §1681e(b).

76.    As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(1); statutory damages pursuant to 15 U.S.C. §1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

77.    As a result of each and every negligent noncompliance of the FCRA, Plaintiffs and Class Members are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. §1681o(a)(1); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §1681o(a)(2) from Defendants.

### COUNT II

### Violation of the Federal Wiretap Act, 18 U.S.C. §2510, *et seq.*
**(On Behalf of Plaintiffs and Class Members Against All Defendants)**

78.    Plaintiffs incorporates by reference paragraphs 1 through 67 of this Complaint as though fully stated herein.

79.    The Federal Wiretap Act, 18 U.S.C. §2510, *et seq.*, prohibits the interception of any wire, oral, or electronic communications. The statute confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. §2520(a).

80.     "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. §2510(12).

81.     "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4).

82.     "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. §2510(8).

83.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. §2510(6). Plaintiffs and Class Members are persons as identified by Section 2510(6) of the Federal Wiretap Act.

84.     Defendants through their design, programming, and operation of vehicles equipped with telematics and data collection capabilities, have intentionally intercepted, endeavored to intercept, or procured others to intercept or endeavor to intercept, electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. §2511(1)(a).

85.    This interception of electronic communications was acquired during transmission, involving real-time data exchange between the vehicles and Defendants' servers, to acquire the content of Plaintiffs' and Class Members' electronic communications.

86.    The contents intercepted include, but are not limited to: location data, driving behavior data, and potentially other sensitive information transmitted from the vehicles.

87.    As a direct result of Defendants' actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the unauthorized interception and transmission of private and personal, confidential, and sensitive communications and data.

88.    Plaintiffs and Class Members allege that Defendants' unauthorized interception of electronic communications constitutes a clear and egregious violation of the Federal Wiretap Act, as described herein.

89.    Plaintiffs and the Classes have been damaged by the interception or disclosure of their communications in violation of the Federal Wiretap Act, as described herein, and are thus entitled to preliminary, equitable, or declaratory relief; statutory and punitive damages; and reasonable attorneys' fees and litigation costs reasonably incurred. 18 U.S.C. §2520(b).

## COUNT III

### Unjust Enrichment
### (On Behalf of Plaintiffs and Class Members Against All Defendants)

90.     Plaintiffs incorporates by reference paragraphs 1 through 67 of this Complaint as though fully stated herein.

91.     Plaintiffs and the Class Members owned or leased vehicles equipped with telematics services provided by GM and OnStar, which collected extensive personal driving data, including, but not limited to, locations, speeds, and other driving behaviors, without the informed consent of Plaintiffs and the Class Members.

92.     GM and OnStar, without the consent or knowledge of Plaintiffs and Class Members, sold this highly personal and proprietary driving data to LexisNexis.

93.     LexisNexis, upon receiving the data from GM and OnStar, utilized it for various commercial purposes, including, but not limited to, the creation and dissemination of consumer reports. These reports were sold to third parties, such as insurance companies, generating substantial revenue for LexisNexis.

94.     GM, OnStar, and LexisNexis have unjustly enriched themselves by commercially exploiting Plaintiffs' and Class Members' proprietary driving data, directly at the expense of their privacy and financial interests.

95.     Defendants' appropriation of Plaintiffs' and Class Members' driving data constitutes the direct conferral of a benefit without just compensation.

96.     Plaintiffs and the Class Members did not freely or knowingly allow Defendants to exploit their personal and proprietary data for commercial gain. If Plaintiffs and the Class Members had been informed of Defendants' intentions to profit from their personal driving data, they would not have consented to such use.

97.     The enrichment of Defendants at the expense of Plaintiffs and the Class Members is against equity and good conscience. Defendants' retention of the benefits without proper compensation to Plaintiffs and the Class Members is unjust and warrants restitution.

98.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class Members have suffered damages and have been deprived of the economic value of their personal and proprietary information.

99.     Plaintiffs and Class Members have no adequate remedy at law.

## COUNT IV

### <u>Invasion of Privacy</u>
**(On Behalf of Plaintiff and Class Members Against All Defendants)**

100.    Plaintiffs incorporates by reference paragraphs 1 through 67 of this Complaint as though fully stated herein.

101.    Plaintiffs' and Class Members' personal and private driving data was collected, used, and disclosed by Defendants without their consent.

102.    Without the consent or knowledge of Plaintiff and Class Members, GM and OnStar collected comprehensive driving data, including, but not limited to,

- 23 -

locations, speeds, and other sensitive information that Plaintiffs and Class Members expected to remain private.

103.   GM and OnStar then disclosed this highly personal and sensitive information to LexisNexis, who further disseminated it to third parties, including insurance companies, for commercial gain.

104.   The publication of these private facts about Plaintiffs and the Class Members by Defendants to third parties is offensive and not of any legitimate public concern.

105.   Defendants' actions, including the unsolicited sharing and publication of Plaintiffs' and the Class Members' personal driving data, intrude upon the solitude, seclusion, and private affairs of Plaintiffs and the Class Members in a manner that would be highly offensive to a reasonable person.

106.   Florida courts recognize the tort of invasion of privacy under common law.

107.   The conduct of Defendants as described herein constitutes an invasion of privacy under two distinct theories recognized under Florida law: the public disclosure of private facts and intrusion upon seclusion.

108.   Defendants have engaged in the public disclosure of private facts by sharing sensitive and private driving data of Plaintiffs and Class Members with third

parties without their consent. These disclosures are highly offensive and not of legitimate concern to the public.

109.   Defendants have intentionally intruded upon the solitude, seclusion, and private concerns of Plaintiffs and Class Members through their unsanctioned collection, use, and dissemination of private driving data. This intrusion is highly offensive and constitutes an invasion of privacy under Florida law.

110.   As a result of Defendants' conduct, Plaintiffs and the Class Members has suffered damages.

**COUNT V**

**Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, *et seq.***
**(On Behalf of Plaintiff and Class Members Against All Defendants)**

111.   Plaintiffs incorporates by reference paragraphs 1 through 67 of this Complaint as though fully stated herein.

112.   Defendants have engaged in unfair and deceptive acts in the conduct of any trade or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, *et seq.*

113.   Without the informed consent of Plaintiffs and Class Members, Defendants engaged in a deceptive scheme by collecting, sharing, selling, and publishing sensitive personal driving data, thereby infringing upon the privacy rights and consumer expectations of Plaintiffs and Class Members.

114. OnStar and GM collected detailed personal driving data from vehicles operated by Plaintiffs and Class Members. This data was shared with LexisNexis, who then sold and published it without the consent or knowledge of Plaintiff and Class Members, violating their reasonable expectations of privacy and data security.

115. The dissemination of this personal driving data by Defendants, devoid of any meaningful context, has led to a misleading representation of the driving behaviors of Plaintiffs and Class Members. This misrepresentation has the potential to, and in some cases has, adversely affected their ability to obtain fair insurance premiums and other consumer benefits.

116. Defendants' actions have directly and proximately harmed Plaintiffs and Class Members, including but not limited to financial harm through increased insurance premiums and the diminution of their privacy and control over personal data.

117. Defendants' actions as described above constitute unfair methods of competition, unconscionable acts or practices, and deceptive acts or practices in the conduct of any trade or commerce within the meaning of Fla. Stat. §501.204(1), in direct violation of the FDUTPA.

118. Plaintiffs and the Class Members are "consumers" as defined by Fla. Stat. §501.203(7), and the actions of Defendants have occurred in the context of conducting "trade or commerce" as defined by Fla. Stat. §501.203(8).

119.   As a result of Defendants' violations of the FDUTPA, Plaintiffs and Class Members have suffered actual damages and are entitled to legal relief, including, but not limited to, restitution, injunctive relief to prevent further violations of Florida law, attorneys' fees and litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Members of the proposed Classes, respectfully requests that the Court enter an Order:

**A.**   Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing their counsel as Class counsel;

**B.**   Declaring that Defendants' conduct, as set forth above, violates the state statutes cited herein;

**C.**   Ordering injunctive relief including, but not limited to, ordering Defendants to delete all driver data of Plaintiffs and Class Members, and to implement procedures to require consent before recording or selling their data;

**D.**   Awarding damages, including nominal, statutory, and punitive damages where applicable, to Plaintiffs and the Class Members in an amount to be determined at trial;

**E.**   Awarding Plaintiffs and the Class Members their reasonable litigation expenses and attorneys' fees;

**F.**     Awarding Plaintiffs and the Class Members pre- and post-judgment interest, to the extent allowable;

**G.**     Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class Members;

**H.**     An award of punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and 18 U.S.C. §2520(b); and

**I.**     Awarding such other and further relief as the Court deems reasonable and just.

**JURY TRIAL DEMANDED**

Under Federal Rule of Civil Procedure 30(b), Plaintiffs demand a trial by jury for any and all issues in this action so triable as of right.

Date: March 31, 2024                          Respectfully submitted,

                                              */s/ E. Powell Miller*
                                              E. Powell Miller (P39487)
                                              Emily E. Hughes (P68724)
                                              Dennis A. Lienhardt (P81118)
                                              **THE MILLER LAW FIRM, P.C.**
                                              950 W. University Drive, Suite 300
                                              Rochester, MI 48307
                                              Tel: (248) 841-2200
                                              epm@millerlawpc.com
                                              eeh@millerlawpc.com
                                              dal@millerlawpc.com

                                              Stuart A. Davidson
                                              Alexander C. Cohen
                                              Facundo M. Scialpi

- 28 -

**ROBBINS GELLER RUDMAN &
DOWN LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Tel: (561) 750-3000
sdavidson@rgrdlaw.com
acohen@rgrdlaw.com
fscialpi@rgrdlaw.com

Marc A. Wites
**WITES & ROGERS, P.A.**
4400 North Federal Highway
Lighthouse Point, FL  33064
Telephone:  561/ 944-3437
mwites@witeslaw.com

*Counsel for Plaintiffs and the Putative
Classes*